Tilghman C. J.
This is one of the’many questions arising out of the act of assembly, by.which mechanics, lumber-merchants, and others, have a lien on houses built in this city, for work done or materials furnished. The claim of C. and J. Remington is -for lumber furnished, according to their contract with W. Graham, for the building of his house. The lumber was delivered, n,ot at or near the house, - but at the carpenter’s shop, where it was to be Worked up. Graham became insolvent, so that the building was ^topped before the lumber was used in the house although it is said, that it has been sold, and the proceeds applied towards payment of the carpenter’s account, which was a lien on the building. If so, the lien creditors in general have had the benefit of the lumber, because it has lessened the total amount of the liens. There is not the least suggestion of any fraud or collusion on the part of C. and y. Remington; nor is it denied that the lumber was furnished for the purpose of being used in the building. The act of assembly makes the house subject to all debts “ contracted for, or by reason of, any materials “ found and provided by any lumber-merchant, &c,,Jor or in '“ the erecting and constructing such house;” that is to say, furnished for the erecting of the house, or used- in the erection of the house. The expressions seem intended to meet the very case which has occurred. The merchant having sold and delivered the materials, for the purpose of being used in the building, could do no more. It would be unjust therefore to throw upon him the risk of their future application; But it is said, that there is a distinction between materials delivered at or near the building, or- at a distance from it. But I cannot see it, provided the delivery at a distance was in the usual course of business, as it was in this case. It is customary to prepare part of the carpenter’s work at the shop; why then should the boards be thrown down first at the building, in order to be taken up again and carried to the *172 shop ? The delivery at one place or another, is no further, important than as it furnishes evidence of the purpose for which the materials were sold. The act of assembly makes no mention of the place of delivery. I was once inclined to think, that the lien might be restrained to the materials actually used in the building. But on reflection, I find that such a construction is not warranted by the words of the law, and would operate unjustly on those who furnish the materials; for how can they tell the exact quantity that the building will require, or what controul have they over the purchaser after delivery ? In the case of Wallace v. Melchior, in the District, Court, 2 Browne 104, the lumber merchant held his lien, al..though the lumber was not used in the building. That, I think, was right. The lumber, there, indeed, was delivered at or near the house; but I can hardly suppose that the Court meant to make that circumstance a sine qua non. If they did, I differ from them. This act of assembly, though intended for a very good purpose, may be so abused, as to defeat the object it was meant to accomplish. The amount of liens may be so great as to produce a deficiency in the security, and then the mechanics and merchants may be in a worse condition than if the law had not been made ; because, they now trust to the house, whereas, had there been no such law, they .might have insisted on security of another kind. And besides, the title is so incumbered, that very serious difficulties occur in making sale of a newly finished house. But this must not induce the Court to attempt any alteration in the law. It is for others to legislate; for us to construe. I am of opinion, that the account of C. and J. Remington should be allowed as a lien, although the lumber was not delivered at or near the house, or used in the building of the house. ’
Yeates J.
No one can doubt that the intention of the le-, gislature was highly favourable to artisans employed in building houses in the city and county of Philadelphia, and to those persons who should furnish the materials for building. The. act of 17th March 1806, repealing the prior act of 1st April 1803, extends the liens to all contracts, %vhether made by the owners of the property built upon, or others acting for them, for work to be done, dr materials to be- provided.
The reason given in the report of the commissioner, for *173 excluding part of the claim of Clement and Job Remington, is, that the materials, so far as the disallowance extended, Were not delivered at the building, but at the carpenter’s . shop, at a distance from the building,, and were not after-wards used in the building. The latter ground of objection is directly opposed to the charge of the Court in Wallace v. Melchior. 2 Browne 104. “ If the lumber was not used in “ the building, but if, without the knowledge or consent of the material man, the owner sold it to other persons, the' “ former has a lien on the building for his debt.” This is plain common sense, adapted to the understanding of all mankind. A person furnishes materials in his proper line for fifty builders during the proper season: shall he keep fifty persons in his employ to watch the workmen, that they may use his materials in the building contemplated ? But if this difficulty can be surmounted, what check or controul would these sub-agents have over the workmen? In the casé cited we are told, that a considerable quantity of lumber was contracted for, more than was wanted for the building, and yet the Court say, “ that if this was done with an understand- “ ing of the parties, that it was to be used in the erection thereof, it will create a lien.” I can readily conceive cases so deeply marked with fraud, that good conscience could not overlook them, as repugnant to the fair principles of common honesty. But this is not that case. It is admitted that the lumber not applied to the building has been worked up by the carpenter, who has credited the building with the material, and thereby the amount of his fair lien has been re-duced, so, that in fact, little or no loss has occurred to other creditors. The fair contract of the parties should always be enforced.
I regard the delivery of materials at or near the building, as evidence merely that they were intended for it, not that it was necessary in itself to create the lien. It ought to be at the place pointed out by the builder, unless he should after-wards dispense with it. In cities and populous towns, we know that the lot contemplated for building cannot serve as a receptacle for the gross materials. Why should they be carried to the spot where they are ultimately to rest, and be removed afterwards ? The carpenter has his workshóp closed up securely; his benches and tools so arranged, as to employ his journeymen and apprentices to the best advantage. *174 We know, that here his doors, windows, sashes, wainscoatting, mantle ornaments, &c. are. prepared in the first instance, and, in the progress of the work, removed and affixed to the building. Why the useless expense of carrying the lumber to the spot and removing it afterwards ? Why shall this be done as to the smith who prepares the nails, hinges, and locks, &c. for the house ? ' Is there any magic in the spot where these materials are at first deposited, which can attract to itself the lien ?
My decided opinion is, that where the materials are bona ■fide contracted for, with an honest understanding on the part of the seller, that they are to be used in the erection thereof, it is of no moment, as to the creation of the lien, whether the materials were delivered, in the first instance, at or near the building, or not; or whether the same were used iu the building, unless the supplier, by some unequivocal act on his part, shall evince that he waves his lien: consequently my opinion is, that .the second exception taken to the report of the commissioner has been supported, and that so far it shall be set aside.
Brackenridge J. delivered no written opinion, nor have the reporters been able to ascertain, whether or not he agreed with the rest of the Court.